UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **THOMAS PENA,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-16-CA-354-XR** |
| | § | |
| **JARVIS ANDERSON, Director,** | § | |
| **Bexar County Adult Community** | § | |
| **Supervision and Corrections Department,** | § | |
| | § | |
| Respondent. | § | |

**ORDER**

Petitioner Thomas Pena filed this federal habeas corpus action pursuant to 28 U.S.C. §
2254 challenging his February, 2013 Bexar County conviction in cause no. 2010-CR-12630 for
indecency with a child and deferred adjudication sentence.  For the reasons set forth below,
Petitioner is entitled to neither federal habeas corpus relief nor a Certificate of Appealability
from this Court.

**I. <u>Background & Procedural History</u>**

On December 22, 2010, a Bexar County grand jury indicted Petitioner in cause no. 2010-
CR-12630 on one count of intentionally and knowingly causing the penetration of the mouth of a
child younger than seventeen by Petitioner's sexual organ and one count of indecency with a
child through exposure.[1]  Pursuant to a plea bargain, Petitioner pleaded nolo contendere to the
indecency charge and the prosecution dismissed the charge of sexual assault of a child.[2]  In

---

[1] The indictment against Petitioner appears as Exhibit B to Petitioner's Memorandum in Support of 2254
Petition, filed May 12, 2016 (ECF no. 12-1).

[2] The verbatim transcription from Petitioner's re-arraignment and nolo contendere plea hearing appears as
an attachment to Respondent's Response to Court's Order to File Records, filed May 3, 2016 (ECF no. 11-4), at pp.
54-60).  During that brief hearing, Petitioner stated on the record that (1) he understood the range of punishment for

accordance with the plea agreement, the trial court deferred a finding of guilt and placed Petitioner on community supervision for a period of seven years.[3]  Petitioner did not appeal from the Order deferring adjudication.

On January 31, 2014, Petitioner filed an application for state habeas corpus relief pursuant to §§ 1 & 2 of Article 11.072 of the Texas Code of Criminal Procedure, asserting that his nolo contendere plea was rendered involuntary by virtue of the ineffective assistance of his trial counsel.[4]  The state trial court denied Petitioner's state habeas corpus application, finding

---

Count Two was a minimum of two years to a maximum of ten years with an optional fine of up to ten thousand dollars, (2) he understood and agreed with the explanation of the plea agreement as stated in open court by the prosecution, i.e., the prosecution would recommend a ten-year term of deferred adjudication and Petitioner agreed to have no contact with the complainant, her mother, or her other sister, (3) he understood the trial court was not bound by the plea agreement, (4) he wished to enter a plea of nolo contendere to the charge of indecency with a child exposure, (5) he was pleading no contest because he had discussed the case with his attorney and decided pleading no contest was the best thing for him to do, (6) no one forced him to enter his plea, (7) he did not serve time in jail on a previous assault charge but received deferred adjudication, and (8) he understood how deferred adjudicated works, having been on it before.

[3] A copy of the trial court's Order of Deferred Adjudication appears as Exhibit A to Petitioner's Memorandum in Support of 2253 Petition, filed May 12, 2016 (ECF no. 12-1).

[4] A copy of Petitioner's state habeas corpus application is attached to Respondent's Response to Court's Order to File Records, filed June 16, 2016 (ECF nos. 14-1 & 14-2).  The Texas Fourth Court of Appeals' opinion affirming the denial of Petitioner's state habeas corpus application accurately summarizes the contents of Petitioner's state habeas corpus application and the arguments raised therein as follows:

>   In his application, Pena claimed his trial counsel failed to provide effective assistance of counsel, alleging numerous failures by trial counsel. Pena further claimed that as a result of trial counsel's deficient performance, his plea was involuntary. In support of his application, Pena attached a number of exhibits, including the trial record, affidavits from several persons purporting to support Pena's claims of ineffective assistance, medical reports of both Pena and the complainant, police reports, as well as video recordings of police interrogations of both Pena and the complainant. The trial court ordered Pena's trial counsel to submit an affidavit in response to Pena's allegations of ineffective assistance. Trial counsel submitted the mandated affidavit, maintaining his representation was effective.
>
>   Ultimately, the trial court denied Pena's application, finding the evidence did not support Pena's claim of ineffective assistance. The court found the statements contained in trial counsel's affidavit to be truthful and credible, and incorporated counsel's affidavit as part of its findings of fact. Furthermore, regarding Pena's claim that his plea was not voluntary, the court found the plea was made knowingly and voluntarily.

*Ex Parte Pena*, No. 04-14-00884-CR, 2015 WL 9002851, at *1 (Tex. App. – San Antonio, Dec. 16, 2015, *pet. ref'd*) (Apr. 6, 2016) (Footnote omitted).

the detailed affidavit submitted by Petitioner's former trial counsel to be credible and truthful and incorporating the affidavit into its Order denying state habeas relief.[5]

The Texas Fourth Court of Appeals opinion affirming the denial of Petitioner's state habeas corpus application accurately summarizes the facts relevant to Petitioner's offense and the state procedural steps which led to Petitioner's entry of a nolo contendere plea to the indecency charge against him:

> According to the evidence at the hearing on Pena's motion to suppress, Officer Ronnie Williams noticed a vehicle, with the driver's side door partially open, parked in an area where several burglaries had occurred. Officer Williams decided to "check up on the vehicle and—and see what was going on." The officer testified that when he approached the vehicle, those inside seemed "startled, real nervous." The passenger, later identified as J.S., appeared as if she was leaning toward the driver's side, but when he approached, she was attempting "to get back on her side." According to the officer, the driver—subsequently identified as Pena—appeared to be trying to pull up his pants. Officer Williams stated in his report that Pena was not wearing underwear.
>
> When the officer asked the pair what was going on, J.S. told the officer Pena was her uncle. Pena claimed he immediately told the officer this was not true. The officer believed "some sexual activity" was occurring because when he approached, Pena seemed startled and was trying to pull up his pants. Officer Williams testified he asked Pena to get out of the car because Pena and J.S. were continually interrupting each other as he was trying to question them. According to the officer, when Pena got out of the vehicle, he could see Pena's pubic hair ... and his penis." The officer subsequently admitted that when evidence was taken from Pena by the sexual assault nurse examiner ("SANE"), he noted Pena had minimal pubic hair. However, he specifically stated during the suppression hearing that when he "saw [Pena] pulling up his pants, it looked like he had pubic hair."
>
> The officer testified Pena threw some tissues on the ground as he exited the vehicle. Officer Williams subsequently collected the tissues, which tested positive for Pena's seminal fluid. Pena made statements to the officer regarding a medical condition that caused Pena to spontaneously ejaculate, forcing him to use tissues to collect the semen. Pena also claimed to have a heart condition and trouble breathing. Pena claimed his clothing was "loose" because his brother had advised him to loosen his clothing to deal with his breathing issues. Officer Williams offered to call EMS, but Pena declined.

---

[5] A copy of the state trial court's Order issued April 20, 2015 containing the state trial court's findings of fact and conclusions or law denying Petitioner's state habeas corpus application appears as an attachment to Respondent's Response to Court's Order to File records, filed May 3, 2016 (ECF no. 11-5).

The officer subsequently turned his attention to J.S. Based on his conversation with her, he determined she was a minor—fifteen-years-old. The officer also determined Pena was not her uncle. Given J.S.'s age, the fact that Pena's penis was exposed, and the appearance of sexual activity, Officer Williams contacted detectives, who instructed him to transport Pena to the police station. The officer took Pena to the police station for additional questioning. Both Pena and J.S. were interviewed by detectives. Thereafter, both were taken to see a SANE for evidence collection and an examination. Pena refused to consent to a search, but a search was conducted without his consent. Lab tests established that no semen was found in J.S.'s mouth, and no saliva from J.S. was found on Pena's penis. However, as noted above, Pena's seminal fluid was found in the tissues he discarded when he stepped out of the vehicle.

J.S. ultimately claimed she performed oral sex on Pena in exchange for his agreement to restore her cellular service. J.S. stated Pena pulled his pants down to his ankles and he was not wearing underwear. J.S. told detectives the sexual activity took place before Officer Williams confronted them, and that Pena had ejaculated on the front seat, using tissues to wipe up the semen. She told the SANE Pena ejaculated on the seat because she refused to "swallow" his semen, despite his offer to take her shopping if she did. According to J.S., Pena then wiped the seat with the tissues. A cellular phone belonging to Pena included sexually suggestive text messages between Pena and the cellular phone found in J.S.'s possession. According to the police report, the messages corroborated J.S.'s claim regarding Pena's request for oral sex in exchange for restoring J.S.'s cellular service.

At the scene, Officer Williams searched the vehicle, claiming he feared for his safety, but Pena pointed out the officer left him uncuffed for the duration of the search. Officer Williams called for additional officers as well as a K–9 unit—though he could not remember if the decision to call the K–9 unit was his or that of another officer. However, after a search by officers and the dog, no drugs were found.

Pena testified on his own behalf at the suppression hearing. Pena explained that during his military service he was injured and hospitalized when he returned to the United States. According to Pena, he was treated for a "mild traumatic brain injury[,] superficial wounds to [his] thorax and Posttraumatic Stress Disorder." He testified his PTSD results in depleted magnesium, which causes his heart to "skip and stop." Pena stated that in addition to the foregoing, he was diagnosed with "exacerbated manic depressive or bipolar conditions." He also suffered damage to his back, knees, and ankle, as well as damage to his pancreas and kidneys due to painkillers and other medications.

Pena testified that at the time of his arrest, he was under the influence of several medications, including Zoloft, which he previously reported to medical authorities caused "involuntary seminal emissions." Pena also reported that his medications resulted in erectile dysfunction and an inability to become aroused. Based on the foregoing, Pena contends he could not have engaged in sexual activity as charged—lacking the desire and ability to engage in sexual activity.

As for what was occurring when Officer Williams approached, Pena testified he was on hold with his cell phone carrier, checking his account. He testified the female passenger, J.S., was known to him and that he had been providing financial support for approximately eight months to J.S., her sister, and her mother. Pena stated he met with J.S. that day to "retrieve a cell phone from her that I just wanted to turn off and turn back and not have anything to do with this family anymore." Pena stated he no longer desired to help the family because they were "bad people" and he had recently reunited with his ex-girlfriend.

Pena denied Officer Williams's claim that his pants were down. Rather, he stated his pants were up, but the top button was undone because the pants were too tight because of weight gain due to his medications. He also claimed the officer could not have seen his groin area because due to weight gain, his stomach covered his groin area.

Pena also testified that during the search of his vehicle, the officer opened J.S.'s purse and found marijuana, a pipe, cigarettes, and "cigarillo papers." At that point, the officer told J.S. she was under arrest and handcuffed her. Officer Williams denied handcuffing J.S. According to Pena, a female officer arrived, uncuffed J.S., and questioned her out of Pena's hearing.

After a bit more testimony from Pena during the suppression hearing, the trial court recessed the hearing until the next morning. However, the next morning the parties did not continue the suppression hearing. Rather, the trial court stated it was bringing in a panel for voir dire. Pena's counsel advised the court Pena was going to enter a "no contest plea." The trial court told Pena's trial counsel to get the paperwork in order. Apparently, after the suppression hearing recessed the day before, the State offered Pena a plea bargain. According to record statements by Pena's trial counsel, the State advised him that if Pena continued with the suppression hearing to a ruling, the current plea bargain offer—whereby the State would waive the charge of sexual assault of a child and allow Pena to plead to indecency with a child—would be off the table. Trial counsel communicated this to Pena. However, when trial counsel reviewed the plea papers, Pena was required to plead to the more serious charge. Pena declined on the record. The State denied trial counsel's claim about continuing the suppression hearing, stating the original plea offer was off the table because the State had to bring J.S. to the courthouse. Thus, it appeared there was no deal and the trial court brought in the venire.

The parties then proceeded to conduct voir dire. Before voir dire was completed, the trial court recessed for lunch. However, when the parties returned from the lunch break, Pena's trial counsel informed the court that pursuant to a plea agreement, Pena wished to enter a plea. At that point, the trial court informed Pena of his rights to a jury trial, the right to cross-examine witnesses, etc. Pena affirmatively stated he was choosing to give up those rights. The State advised the court it was waiving and abandoning the sexual assault of a child count in the indictment and proceeding only on the indecency with a child count. The trial court then advised Pena of the range of punishment—two to ten years' confinement and a fine up to $10,000.00, and Pena stated he understood. The State then explained that pursuant to the plea agreement, it was recommending Pena be placed on ten years' deferred adjudication. Pena stated he understood the

agreement. When asked by the trial court, Pena stated he was pleading nolo contendere because after discussing the matter with his attorney, it was the best thing for him to do; he denied being forced into the plea. The trial court accepted the plea, finding it was voluntarily entered, and sentenced Pena to seven years' deferred adjudication probation—three less than that recommended by the State. The trial court also advised Pena to thank his trial counsel because "[h]e did an extremely good job for you."

*Ex Parte Pena*, No. 04-14-00884-CR, 2015 WL 9002851, at *4–6 (Tex. App. Dec. 16, 2015, *pet. ref'd*) (Apr. 6, 2016).

On April 8, 2016 (ECF no. 1), Petitioner filed a federal habeas corpus petition in which he argued (1) his trial counsel rendered ineffective assistance in connection with Petitioner's nolo contendere plea by failing to (a) adequately investigate the case against Petitioner, (b) develop evidence showing the complainant's statement to police contradicted her testimony at the hearing on Petitioner's motion to suppress, (c) interview multiple witnesses who could have testified the complainant's reputation for being truthful was bad, (d) investigate and develop evidence, including expert testimony, showing Petitioner suffers from a combat-related medical condition with results in "involuntary emissions" of seminal fluid, (e) interview witnesses who could have testified sexually suggestive text messages found on the complainant's telephone had not come from Petitioner, (f) appear in a timely manner at hearings and conferences with Petitioner, (g) adequately review the complainant's entire recorded statement to police, and (h) subpoena various witnesses, including other police officers who were present at the time of Petitioner's arrest for sexual contact with a child and indecency with a child, and (2) Petitioner's nolo contendere plea was rendered involuntary by virtue of the ineffective assistance of Petitioner's trial counsel outlined above and the deteriorating relationship between Petitioner and his trial counsel - who also served as Petitioner's bail bondsman.

## II. <u>Standard of Review</u>

Because Petitioner filed his federal habeas corpus action after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of Petitioner's claims for federal habeas corpus relief is governed by the AEDPA.  *Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Under the AEDPA standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d) (1) have independent meanings.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown v. Payton*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'").  A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established

federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown v. Payton*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of...clearly established Federal law,' § 2254(d) (1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins v. Smith*, 539 U.S. at 520-21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

As the Supreme Court has explained:

Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond
any possibility for fairminded disagreement."

*Bobby v. Dixon*, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011) (quoting *Harrington v. Richter,* 562
U.S. 86, 103 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the

holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-

court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004)

("We look for 'the governing legal principle or principles set forth by the Supreme Court at the

time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Under the AEDPA, what constitutes "clearly established federal law" is determined through

review of the decisions of the United States Supreme Court, not the precedent of the federal

Circuit Courts. *See Lopez v. Smith*, 135 S. Ct. 1, 2, 190 L. Ed. 2d 1 (2014) (holding the AEDPA

prohibits the federal courts of appeals from relying on their own precedent to conclude a

particular constitutional principle is "clearly established").

The AEDPA also significantly restricts the scope of federal habeas review of state court

fact findings.  28 U.S.C. § 2254(d) (2) provides federal habeas relief may not be granted on any

claim that was adjudicated on the merits in the state courts unless the state court's adjudication of

the claim resulted in a decision based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  *Wood v. Allen*, 558 U.S. 290, 301 (2010)

("[A] state-court factual determination is not unreasonable merely because the federal habeas

court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529

U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect*

application of federal law.").  Even if reasonable minds reviewing the record might disagree

about the factual finding in question (or the implicit credibility determination underlying the

factual finding), on habeas review this does not suffice to supersede the trial court's factual determination.  *Wood v. Allen*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, 28 U.S.C. § 2254(e) (1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. at 338-39 ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e) (1).  It remains unclear at this juncture whether § 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under § 2254(d)(2).  *See Wood v. Allen*, 558 U.S. at 300 (choosing not to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice v. Collins*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)).

However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review.  *See Miller-El v. Dretke*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.   Deference does not by definition preclude relief.").

### III. Ineffective Assistance by Trial Counsel

A.    The Claim Restated

Petitioner argues his trial counsel rendered ineffective assistance in connection with Petitioner's nolo contendere plea by failing to (1) adequately investigate the case against Petitioner, (2) develop evidence showing the complainant's statement to police contradicted her testimony at the hearing on Petitioner's motion to suppress, (3) interview multiple witnesses who could have testified the complainant's reputation for being truthful was bad, (4) investigate and develop evidence, including expert testimony, showing Petitioner suffers from a combat-related medical condition with results in "involuntary emissions" of seminal fluid, (5) interview witnesses who could have testified sexually suggestive text messages found on the complainant's telephone had not come from Petitioner, (6) appear in a timely manner at hearings and conferences with Petitioner, (7) adequately review the complainant's entire recorded statement to police, and (8) subpoena various witnesses, including other police officers who were present at the time of Petitioner's arrest for sexual contact with a child and indecency with a child.

B.    State Court Disposition

Petitioner presented the same basic set of complaints about the performance of his trial counsel in his state habeas corpus application.  The state habeas trial court reviewed the voluminous documentation submitted by Petitioner's state habeas counsel and the detailed affidavit submitted by Petitioner's former lead trial counsel, attorney Robert D. Behrens[6] and

---

[6] A copy of attorney Behrens' affidavit dated September 16, 2014 appears as an attachment to Respondent's Answer to Petitioner's Application [sic] for Writ of Habeas Corpus, filed April 27, 2016 (ECF no. 8). In his affidavit, attorney Behrens states in pertinent part that (1) he conferred "ad infinitum" with Petitioner, who "constantly texted and called Behrens and who wanted weekly meetings despite having nothing new to tell Behrens, (2) Petitioner failed to furnish Behrens with contact information for Meghan Fridley, the woman who claimed to have exchanged text messages with Petitioner shortly before Petitioner's arrest but whose affidavit does not

expressly state that any of her text messages with Petitioner were of a sexual nature, (3) in her statement, the complainant knew the content of the sexually oriented text messages despite Fridley's claim that she had the cell phone and was using it to text Petitioner, (4) Fridley had insufficient basis to form a personal opinion regarding the credibility of the complainant whom Fridley state she had met only once briefly, (5) Fridley did not have a factual basis for knowing the reputation of the complainant's credibility in the community, (6) Behrens informed Petitioner that, because there was no verified exchange of DNA between the complainant and Petitioner, the complainant's testimony and the circumstantial evidence would form the basis for the prosecution's case and would likely be sufficient to support a conviction, (7) despite receiving this information, Petitioner failed to furnish Behrens with contact information for any of the witnesses Petitioner claimed could furnish favorable testimony at trial, (8) Petitioner never indicated to Behrens that a subpoena would be needed to obtain the testimony of any of Petitioner's proposed witnesses, (9) during a break in the hearing on Petitioner's motion to suppress, the complainant and prosecutor walked into the conference room where Petitioner and Behrens were meeting and Petitioner "turned white as a sheet," (10) after Behrens and Petitioner moved to another conference room, Behrens asked the trial court for permission to confer with the complainant and his request was granted, (11) Behrens conferred with the complainant, who "stated in no uncertain terms that what she complained of did in fact happen" and informed Behrens she was there to testify "to make sure Applicant didn't do it to anyone else," (12) Behrens reported the results of his conference with the complainant to Petitioner, (13) Behrens communicated to Petitioner the fact that a conviction for sexual assault of a child would mean Petitioner would be required to register as a sex offender for the rest of his life, (14) Behrens promised to try to discredit the complainant if the case went to trial but refused to furnish Petitioner with a guarantee that he could do so, (15) after conferring with Behrens, Petitioner decided to enter a plea without further proceedings, (16) Behrens reported this to the prosecutor but when plea documents were drawn up, Behrens learned the prosecutor wanted Petitioner to plead to count one, i.e., sexual assault of a child, rather than count two - indecency with a child, (17) when the prosecutor refused to relent from this position, the trial judge called for the jury panel, (18) when Behrens reminded the trial court the hearing on the motion to suppress was not yet complete, the trial court advised Behrens he would carry the motion with the trial, (19) Petitioner informed both Behrens and co-defense counsel Stolhanske that he did not want to go to trial, (20) after lunch, the prosecutor agreed to permit Petitioner to plead to the indecency count and to drop the sexual assault count, (21) other than the Petitioner and the complainant, there were no witnesses who could testify directly to what happened between the two of them in the car before the officer arrived on the scene, (22) the only reason a ruling was not obtained on the Petitioner's motion to suppress was the Petitioner chose to enter a plea rather than continue to trial, (23) a plea to the sexual assault count would have required Petitioner to register as a sex offender for the rest of his life whereas a plea to the indecency count would require registration only for ten years after Petitioner discharged his sentence, (24) Behrens was occasionally late to hearings and conference because of his busy criminal defense docket but the only result of his inability to be two places at the same time was that Petitioner's trial was pushed back and did not affect the outcome of Petitioner's trial, (25) there were occasions when Behrens was unable to meet with Petitioner as scheduled due to conflicts arising from other cases and personal matters, (26) Behrens met with Jessica Shaw in late May, 2011 and discussed with her Petitioner's "spontaneous emissions," (27) Behrens was not given Shaw's contact information but gave her his contact information, (28) Behrens was aware that Petitioner attempted to retain the services of a different attorney, believed at one point Petitioner had actually done so, but is unaware of how that unsuccessful attempt caused "negative ramifications" between himself and Petitioner, (29) it was possible to obtain subpoenas for any of Petitioner's proposed witnesses after trial started if it had been necessary to do so, (30) at no point during the plea colloquy with the trial court did Petitioner indicate his plea was involuntary or that he was dissatisfied with Behrens' representation, (31) Behrens and Petitioner reviewed the complainant's videotaped statements together, (32) Behrens also reviewed the entirety of the prosecutor's file, (33) Behrens instructed Petitioner to obtain medical records showing Petitioner suffered from "spontaneous emissions" as a result of combat injuries and medications prescribed due to Petitioner's service related diagnosis, which had been reported to physicians prior to the incident with the complainant, (34) Petitioner knew Behrens intended to turn those records over to the prosecution to help prevent a claim that Petitioner's medical condition had been fabricated, (35) none of the witnesses Petitioner suggested might be able to testify about the complainant's credibility possessed personal knowledge of the complainant's character for truthfulness or were qualified to render personal opinions about the complainant's reputation, and (36) Petitioner orally affirmed to the trial court that he understood the waiver of his rights, the terms of his plea agreement, and his satisfaction with Behrens' representation.

found (1) attorney Behrens' affidavit "to be truthful and credible," (2) the affidavits attached to Petitioner's state habeas application were not persuasive on the issue of the ineffective assistance of counsel in light of attorney Behrens' affidavit, (3) Petitioner represented to the trial court that he believed pleading to the indecency count was the best thing for him to do, and (4) the trial judge's comment that Petitioner's trial counsel did a good job for Petitioner was credible.[7]  The state habeas trial court concluded (1) the performance of Petitioner's trial counsel was not deficient under the first prong of the *Strickland* analysis, (2) there was no probability the outcome of Petitioner's trial would have been any different but for the allegedly deficient performance of Petitioner's trial counsel, and (3) Petitioner failed to show his plea was entered involuntarily.[8]  The Texas Fourth Court of Appeals affirmed the state trial court's denial of state habeas corpus relief.  *Ex parte Thomas A. Pena*, no. 04-14-00884-CR, 2015 WL 9002851, at *2-*11 (Tex. App. – San Antonio, Dec. 16, 2015, *pet. ref'd.*).

C.     Clearly Established Federal Law

The Sixth Amendment entitles criminal defendants to "the effective assistance of counsel," *i.e.*, legal representation that does not (1) fall below an objective standard of reasonableness in light of prevailing professional norms and the circumstances of the defendant's

---

[7] Originally, Judge Lorina Rummel issued an Order dated November 12, 2014 containing the foregoing findings of fact, along with conclusions of law, and a formal denial of Petitioner's state habeas corpus application. A copy of Judge Runnel's Order appears as an attachment to Respondent's Answer, filed April 27, 2016 (ECF no. 8).  As explained by the Texas Fourth Court of Appeals in its opinion affirming the denial of Petitioner's state habeas corpus application, however, the trial court later withdrew that order and transferred the case to the magistrate court for review.  In an Order issued April 20, 2015, Magistrate Andrew Carruthers signed an Order denying Petitioner's state habeas corpus application which contained the same essential factual findings and conclusions as the original Order.  A copy of Judge Carruthers' Order appears as an attachment to Respondent's Response to Court's Order to File records, filed May 3, 2016 (ECF no. 11-5).  The state habeas trial court's factual findings appear on pp. 3-5 of this Order.

[8] Trial Court Denying Relief Pursuant to TCCP Article 11.072, issued April 20, 2015 (ECF no. 11-5), at pp. 5-7.

case (*Wong v. Belmontes*, 558 U.S. 15, 16-17 (2009); *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009)); and (2) give rise to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (*Porter v. McCollum*, 558 U.S. 30, 38-40 (2009); *Wong v. Belmontes*, 558 U.S. at 19-20).

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 687-91. Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins v. Smith*, 539 U.S. at 523 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said

counsel at the time).  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."  *Bobby v. Van Hook*, 558 U.S. at 7; *Strickland v. Washington*, 466 U.S. at 688-89.  It is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland v. Washington*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different.  *Wiggins v. Smith*, 539 U.S. at 534; *Strickland v. Washington*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding.  *Strickland v. Washington*, 466 U.S. at 694.

Under the AEDPA's deferential standard of review, claims of ineffective assistance adjudicated on the merits by a state court are entitled to a deferential form of federal habeas review.  The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013).  Under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Wheeler,* 136 S. Ct. 456, 460 (2015); *White v. Woodall,* 134 S. Ct. 1697, 1702 (2011); *Harrington v. Richter,* 562 U.S. 86, 103 (2011).  "Viewing the *Strickland* test from the narrow perspective afforded federal courts by AEDPA results in even greater deference to the state courts' judgment." *Williams v. Stephens*, 761 F.3d 561, 567 (5th Cir. 2014), *cert. denied,* 135 S. Ct. 1735 (2015).

When a petitioner brings a *Strickland* claim under AEDPA, the "pivotal question" is not whether the petitioner was deprived of his right to counsel under the Sixth Amendment.  Instead, "the question is whether the state court's application of the *Strickland* standard was unreasonable."  Both the *Strickland* standard and AEDPA standard are "highly deferential," and "when the two apply in tandem, review is doubly so."

*Beatty v. Stephens*, 759 F.3d 455, 463 (5th Cir. 2014) (citations omitted), *cert. denied,* 135 S. Ct. 2312 (2015).

Thus, in evaluating Petitioner's complaints about the performance of his trial counsel which the state courts rejected on the merits, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded Petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis.  *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004).  In making this determination, this Court must consider the underlying *Strickland* standard.  *Id.*

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence.  *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009), *cert. denied*, 558 U.S. 839 (2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008), *cert. denied*, 556 U.S. 1240 (2009).  Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland v. Washington*, 466 U.S. at 690.

D.     AEDPA Analysis

Petitioner has presented this Court with no evidence, much less clear and convincing evidence, establishing the state habeas court's factual findings in connection with Petitioner's ineffective assistance claims were in any manner erroneous.  It is not the province of a federal habeas court to second-guess the credibility findings made by a state court unless there is clear

16

and convincing evidence showing those findings were erroneous. *Schriro v. Landrigan*, 550

U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state

courts' factual findings unless applicants rebut this presumption with 'clear and convincing

evidence.'"); *Rice v. Collins*, 546 U.S. at 338-39 ("State-court factual findings, moreover, are

presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and

convincing evidence.'").

        1.    <u>No Deficient Performance</u>

Petitioner complains in conclusory fashion that his trial counsel failed to adequately

investigate the case against Petitioner, failed to subpoena witnesses who were present at the time

of Petitioner's arrest, failed to prepare to impeach the complainant based upon inconsistencies in

her statement to police, failed to develop evidence showing Petitioner suffers from a medical

condition relevant to the case, and failed to adequately consult with Petitioner prior to trial.  In

stark contrast, Petitioner's lead trial counsel furnished the state habeas trial court with an

affidavit explaining he (1) reviewed the complainant's videotaped statement to police with

Petitioner, (2) met with Petitioner's proposed witness Jessica Shaw to discuss Petitioner's

medical problems and was aware of her ability to testify to those matters, (3) directed Petitioner

to obtain and then furnished the prosecutor with medical records showing Petitioner's medical

problems causing "involuntary emissions" existed prior to the date of Petitioner's arrest, (4)

participated in a hearing on Petitioner's motion to suppress – until the trial judge decided to carry

the motion forward to trial, (5) requested Petitioner furnish contact information for Meghan

Fridley which Petitioner failed to do, (6) furnished his contact information to Jessica Shaw, (7)

was aware all witnesses present at the time of Petitioner's arrest were present in the courthouse

on the day Petitioner chose to enter a plea to the indecency charge, (8) was capable of

subpoenaing any non-present witnesses during trial, and (9) personally interviewed the complainant with court permission on the eve of trial and reported back to Petitioner the complainant was prepared to testify that the Petitioner had sexually assaulted her.  The state habeas trial court reasonably found Petitioner's former trial counsel's affidavit to be truthful and credible.

Attorney Behrens' affidavit establishes an adequate investigation.  Petitioner's lead trial counsel was well aware of Petitioner's medical condition and Jessica Shaw's ability to corroborate same if called to testify at trial.  The practical problem with such medical evidence is that it did not furnish a defense to the criminal charges against Petitioner.  The fact Petitioner suffered from all the medical complications detailed in Jessica Shaw's affidavit did not mean the Petitioner was physically unable to expose himself to the minor complainant.  Ultimately, assuming both the complainant and Petitioner testified at trial, Petitioner's guilt on the two charges in the indictment was going to turn on the relative credibility of the complainant's and the Petitioner's accounts of what happened inside the vehicle immediately before Petitioner's arrest.

Insofar as Petitioner complains his trial counsel failed to impeach the complainant based upon inconsistencies in her statement to police, that claim is non sequitur.  Petitioner's trial counsel never had the opportunity to impeach the complainant.  The complainant did not testify during the hearing on Petitioner's motion to suppress held February 5, 2013.[9]  Petitioner's decision to plead nolo contendere precluded his trial counsel from attempting to impeach the

---

[9] The verbatim transcription from the hearing on Petitioner's motion to suppress, held February 5, 2013, appears as Exhibit BB to Petitioner's Memorandum in Support of 2254 Petition, filed May 12, 2016 (ECF no. 12-12-2).

complainant *at trial* based upon any inconsistencies in her statement to police or any inconsistencies between her trial testimony and her statement to police. Petitioner alleged no specific facts and presented no evidence to the state habeas court showing his trial counsel was incapable of attempting to impeach the complainant when she testified at trial.

Attorney Behrens also stated in his affidavit that, in his professional opinion, none of the witnesses identified by Petitioner had personal knowledge of enough facts to be able to testify at trial regarding the complainant's credibility or reputation for truthfulness in the community. Attorney Behrens also stated much of the information about Petitioner's case contained in the affidavits of Petitioner's purported witnesses consisted of information the Petitioner had conveyed to those persons. This Court's independent review of the affidavits of Jessica Shaw, Meghan Fridley, Kristina Marie Pena, Yvette Moore, Mayra M. Jauregui, and Leonard Lopez which were exhibits to Petitioner's state habeas corpus application confirm attorney Behrens' analysis that these witnesses all lacked personal knowledge of the facts of Petitioner's offense and appeared to lack knowledge of the complainant's reputation in the community for veracity.[10]

Insofar as Petitioner complains his trial counsel failed to subpoena favorable witnesses, Petitioner has failed to counter the affidavit of attorney Behrens in which he stated (1) all of the people present at the time of Petitioner's arrest were present in the courthouse on the date of trial, (2) based upon Petitioner's representations, there did not appear to be any objective need to subpoena witnesses who had agreed to cooperate with Petitioner's defense, and (3) if necessary, subpoenas could have been issued and served upon any uncooperative defense witnesses during

---

[10] The affidavits of these proposed witnesses appear among the exhibits which accompanied Petitioner's state habeas corpus application and appear in the record before this Court as attachments to as attachments to Respondent's Response to Court's Order to File records, filed June 16, 2016 (ECF nos. 14-3 & 14-4).

trial.  Petitioner presented the state habeas court with no evidence showing it was reasonably necessary for the defense to issue subpoenas for any potential defense witness.  None of the affidavits of potential witness which Petitioner furnished to the state habeas court included statements indicating they were unwilling to testify at Petitioner's trial without being served with a subpoena.

Attorney Behrens' affidavit also accurately points out the affidavit of Meghan Fridley which Petitioner furnished to the state habeas court did not specifically acknowledge that she and Petitioner had exchanged sexually oriented text messages immediately prior to Petitioner's arrest.  Instead, Ms. Fridley merely states in her affidavit that (1) for a period of time prior to Petitioner's arrest, she had possession of the cell phone which the complainant apparently had in her custody at the time of Petitioner's arrest and (2) Ms. Fridley and Petitioner had exchanged some text messages using that phone.  Ms. Fridley did not state in her affidavit that she was the recipient of the text message found on the cell phone in question requesting an act of fellatio.  As Attorney Behrens' affidavit correctly points out, even if the defense could have proven at trial that the Petitioner exchanged sexually oriented text messages with Ms. Fridley at some point, that fact did not prevent Petitioner from doing the same with the complainant shortly before his arrest while the complainant had custody of the cell phone in question.

For the foregoing reasons, the state habeas court's conclusion that Petitioner's ineffective assistance claim failed to satisfy the deficient performance prong of the *Strickland* analysis was neither contrary to, nor involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States nor based on an unreasonable determination of the facts in light of the evidence presented in the Petitioner's trial and state habeas corpus proceedings.

2.      No Prejudice

For similar reasons, the state habeas court reasonably concluded there was no reasonable probability that, but for the failure of Petitioner's trial counsel to undertake any of the actions identified in Petitioner's state habeas corpus application or federal habeas corpus petition, the outcome of Petitioner's trial would have been any different.  Petitioner was made aware by his trial counsel prior to the time Petitioner entered his nolo plea that the complainant was present in the courthouse and fully prepared to testify against Petitioner in the same manner as she had in her statement to police, i.e., to admit she performed fellatio on Petitioner at a time when she was under the age of seventeen.  None of Petitioner's proffered witnesses could have furnished a defense to that charge.  None of the Petitioner's proposed witnesses knew the complainant or her reputation in the community for truthfulness well enough to furnish any compelling testimony regarding the complainant's credibility.  If convicted of sexual assault of a child, Petitioner faced a possible term of incarceration and a lifetime of registration as a sex offender.  Instead, Petitioner's trial counsel negotiated a favorable plea agreement which permitted Petitioner to plead nolo contendere to the lesser charge of indecency with a child through exposure and receive deferred adjudication.

3.      Conclusions

The state habeas court reasonably concluded Petitioner's ineffective assistance claims fail to satisfy both prongs of the *Strickland* analysis.  Petitioner's ineffective assistance claim does not warrant federal habeas corpus relief.

## IV. <u>Involuntary Guilty Plea</u>

A.      <u>The Claim</u>

In his second claim for relief, Petitioner argues his plea of nolo contendere was rendered involuntary by virtue of the ineffective assistance of his trial counsel discussed above and by the deteriorating relationship between him and his trial counsel.

B.      <u>State Court Disposition</u>

Petitioner presented the same basic argument in his state habeas corpus application and, as explained above, the state habeas trial court rejected that claim on the merits after finding Petitioner had failed to show his plea was involuntary and the Texas Fourth Court of Appeals affirmed as follows:

> At the plea hearing, the following exchange took place:
> > THE COURT: Back on the record in Texas versus Thomas Pena. Mr. Pena, [trial counsel], come on up. We are in jury selection. My understanding is that the defendant wishes to enter a plea, is that correct, [trial counsel]?
> > [TRIAL COUNSEL]: Yes, Your Honor.
> > THE COURT: Mr. Pena, you have the right to a jury trial. You have the right to cross-examine witnesses. You have the right to remain silent. You have chosen to give up those rights and proceed with a plea today; is that right?
> > [PENA]: Yes, I have.
> > * * *
> > THE COURT: ... Mr. Pena, the range of punishment for Count 2 is a minimum of 2 years to a maximum of 10 years TDC, an optional fine up to $10,000. Do you understand the full range of punishment?
> > [PENA]: Yes, I do.
> > THE COURT: State is there an agreement?
> > THE STATE: Yes, Judge. It's going to be for deferred adjudication. State is recommending—well, I think the parties have agreed to recommend to the Court 10 years of deferred in exchange for going open on the third degree felony ...
> > * * *
> > THE COURT: Mr. Pena, is that the agreement?

[PENA]: Yes, Your Honor.

THE COURT: Do you understand it?

[PENA]: Yes, I do.

THE COURT: Do you understand that I'm not bound to follow it, but if I do, you cannot appeal this case to a higher court. Do you understand that?

[PENA]: Yes, sir.

* * *

THE COURT: Mr. Pena, to the offense of ... indecency with a child-exposure occurring July 12, 2010, how do you plead: Guilty, not guilty, or no contest?

[PENA]: Nolo contendere.

THE COURT: Are you pleading no contest because you have discussed the case with your attorney and you decided that pleading no contest is the best thing for you to do?

[PENA]: Yes, I am.

THE COURT: Has anyone forced you?

[PENA]: No, Your Honor.

THE COURT: I accept your plea as voluntary.

Because the record reflects Pena was properly admonished as to his rights, the burden—which is heavy—shifted to Pena to prove his plea involuntarily, i.e., without understanding its consequences, due to ineffective assistance of counsel. *See Labib,* 239 S.W.3d at 332; *Arreola,* 207 S.W.3d at 391.

As we stated above, when a defendant contends that his plea was involuntary due to ineffective assistance of counsel, he must comply with the two-pronged *Strickland* test. *See Hill,* 474 U.S. at 58; *Ali,* 368 S.W.3d at 833; *Labib,* 239 S.W.3d at 332; *Arreola,* 207 S.W.3d at 391–92. Thus, as noted above, Pena had to prove: (1) counsel's advice or actions were outside the range or competency demanded by attorneys in criminal cases; and (2) that but for counsel's erroneous advice or deficiencies, he would not have entered a plea, but would have proceeded to trial. *See Ali,* 368 S.W.3d at 833; *Labib,* 239 S.W.3d at 332.

In his brief, Pena argues that "due to the litany of problems outlined in Point of Error I, [he] was unable to make an intelligent choice as to whether to take a plea or not." However, as set out in detail above, we addressed Pena's numerous claims of ineffective assistance and determined he failed to establish—with regard to any allegation that trial counsel's performance was deficient and/or that but for any alleged deficiency—he would not have entered a plea. *See Ali,* 368 S.W.3d at 833; *Labib,* 239 S.W.3d at 332. Accordingly, we cannot say the trial court erred in concluding Pena's plea was voluntary based upon the previously addressed allegations of ineffective assistance.

However, in addition to the allegations of ineffectiveness raised in his first issue, Pena seems to suggest his "deteriorating" relationship with his counsel resulted in an involuntary plea. Pena points out he attempted to hire new counsel, but was unable to do so because of financial inability—pointing out the trial counsel was also his bondsman. Pena argues his attempt to hire new counsel

"further deteriorated the already damaged relationship" with trial counsel and resulted in "negative ramifications" though he fails to explain the alleged negative impact.   However, trial counsel, in his court-mandated affidavit, averred that although he was aware Pena attempted to hire new counsel, he was unaware his relationship with Pena was "damaged."   Trial counsel also denied knowledge of the "negative ramifications" to which Pena alludes.

Pena offers only conclusions with regard to the alleged "deteriorating relationship" with trial counsel.   There is nothing in the record to support a reasonable belief that his trial counsel was not going to represent him effectively. Allegations of ineffectiveness must be firmly founded in the record, and the record must demonstrate affirmatively the alleged ineffectiveness.   *Nailor,* 149 S.W.3d at 130; *Goodspeed,* 187 S.W.3d at 392; *Labib,* 239 S.W.3d at 333. Furthermore, speculation concerning counsel's potential performance is improper when the record is silent in that regard. *See Labib,* 239 S.W.3d at 333.

Pena has not proved the existence of a "deteriorating relationship" or that but for the difficulties in the relationship he would not have pled nolo contendere to the charge of indecency with a child, but would have insisted on going to trial. *See Strickland,* 466 U.S. at 690; *Ali,* 368 S.W.3d at 833.   Moreover, the existence of a "deteriorating" relationship was a question of fact, dependent upon the credibility of the affidavits, and the trial court was within its discretion to accept trial counsel's averment that he was unaware his relationship with Pena was in any way damaged.   *See Guerrero,* 400 S.W.3d at 583; *Wheeler,* 203 S.W.3d at 325–26.   Accordingly, we hold the trial court did not err in concluding Pena's plea was voluntary.

*Ex Parte Pena*, No. 04-14-00884-CR, 2015 WL 9002851, at *12–13.

## C.   Clearly Established Federal law

### 1.   Collateral Review of Guilty & Nolo Contendere Pleas Generally

A guilty plea will be upheld on collateral review if entered into voluntarily, intelligently, and knowingly.   *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001).   While the terms "voluntary" and "knowing are frequently used interchangeably, they embody different concepts, i.e., a plea of guilty is not voluntary if induced by threats, misrepresentations, unfulfilled promises, or promises of an improper nature; whereas, a guilty plea is "knowing" if the

defendant understood the consequences of his plea, i.e., the defendant understood the maximum possible punishment he faced if convicted.   *United States v. Hernandez*, 234 F.3d at 254 n.3. The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012); *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007).

> 2.      The Burden on the Defendant Collaterally Attacking his Plea

"Ordinarily, a defendant will not be heard to refute his testimony given under oath when pleading guilty."   *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985).  If, however, the defendant offers specific factual allegations *supported by the affidavit of a reliable third person*, then he is entitled to a hearing on his allegations.  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Long*, 722 F.3d 257, 264 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1514 (2014); *United States v. Gray*, 717 F.3d 450, 451 (5th Cir. 2013).

The representations made by the defendant, his lawyer, and the prosecutor at a plea hearing, as well as the findings made by the trial judge accepting the plea, constitute a formidable barrier to any subsequent collateral attack.  *Blackledge v. Allison*, 431 U.S. at 73-74, 97 S.Ct. at 1629; *Montoya v. Johnson*, 226 F.3d at 406.  Any documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight."  *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994), *cert. denied*, 513 U.S. 1064 (1994); *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985), *cert. denied*, 474 U.S. 838 (1985).  The defendant's signature on

guilty plea documents is prima facie proof of the validity of the plea.  *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994).

Petitioner presents this Court with no factual allegations from any third party sufficient to raise an issue as to the voluntariness of his nolo contendere plea.   In fact, Petitioner's representations made to the Court at Petitioner's plea hearing on February 6, 2013 belie any assertion he was promised anything beyond the express terms of his plea agreement to induce his plea.

### 3.    The Requirements that a Plea Be Voluntary, Intelligent, and Knowing

A federal court will uphold a plea challenged in a habeas corpus proceeding if the plea was knowingly, voluntarily, and intelligently entered into.  *United States v. Hernandez*, 234 F.3d at 254; *Montoya v. Johnson*, 226 F.3d at 405.  "For a guilty plea to be voluntary, it must "not be the product of 'actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel."  *United States v. Urias-Marrufo*, 744 F.3d 361, 366 (5th Cir. 2014).  As explained above, Petitioner has alleged no specific facts showing his nolo contendere plea on February 6, 2013 was in any manner involuntary.

For a guilty plea to be "intelligently" and "knowingly" entered, the defendant must understand both: (1) the true nature of the charge against him, *see United States v. Urias-Marrufo*, 744 F.3d at 366 (the defendant must have notice of the charge against him); *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991) (valid guilty plea must constitute an intelligent admission of the commission of the offense based on receipt of real notice of the true nature of the charge); and (2) "the consequences" of a guilty plea, i.e., the full range of punishment to which the defendant will be subject if convicted (including any mandatory

minimum sentence) and the nature of the constitutional protections he is waiving by entry of his guilty plea, *see United States v. Urias-Marrufo*, 744 F.3d at 366 (defendant must understand the consequences of the plea and the nature of the constitutional protections he is waiving); *United States v. Carreon-Ibarra*, 673 F.3d 358, 364 (5th Cir. 2012) (district court obligated under Rule 11, Federal Rule Criminal Procedure, to accurately advise defendant of the proper minimum sentence resulting from a guilty plea); *United States v. Hernandez*, 234 F.3d at 255 (to be knowing and intelligent, the defendant's guilty plea must be based upon a full understanding of what the plea connotes and of its consequences).

D.    AEDPA Analysis

A review of the verbatim transcription from Petitioner's February 6, 2013 plea hearing establishes Petitioner was fully informed of (1) the nature of the charge against him and (2) the range of punishment he could receive if convicted on such charge.  Petitioner's representations at his plea hearing refute any argument that (1) he did not understand the terms of his plea agreement or (2) he was forced to accept his plea agreement against his will.  Thus, Petitioner has alleged no specific facts showing his nolo contendere plea was anything but intelligent and knowing in nature.  Likewise, Petitioner has not alleged any specific facts showing his plea was the product of any misrepresentation by the prosecution or state trial court or any misunderstanding engendered by Petitioner's trial counsel. Nor has Petitioner furnished this Court with any fact-specific allegations, much less any evidence from a third party, suggesting Petitioner's representations made in open court on February 6, 2013 were anything other than voluntary and fully informed.  For the reasons set forth below, Petitioner's complaints about allegedly ineffective assistance by his trial counsel do not furnish a legitimate basis for challenging the voluntary, intelligent, and knowing nature of Petitioner's nolo contendere plea.

27

The state habeas court's rejection on the merits of Petitioner's claim that his nolo contendere plea was involuntary was neither contrary to contrary to, nor involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States nor based on an unreasonable determination of the facts in light of the evidence presented in the Petitioner's trial and state habeas corpus proceedings. Petitioner's conclusory complaints about his trial counsel's alleged failure to adequately investigate the case against Petitioner, subpoena potentially favorable witnesses, unwillingness to meet with Petitioner every time Petitioner wished said counsel do so, and develop potentially beneficial evidence do not satisfy either prong of the *Strickland* analysis and do not support a finding that Petitioner's plea was involuntary.

## V. <u>Request for an Evidentiary Hearing</u>

Petitioner has requested an evidentiary hearing to permit more factual development of his claims herein. Petitioner had a full and fair opportunity during his state habeas corpus proceeding to present the state habeas court with any and all available evidence supporting his claims for state habeas corpus relief. Under the AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir.) (the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court), *cert. denied*, 522 U.S. 984 (1997). Furthermore, where a petitioner's claims have been rejected on the merits, further factual development in federal court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*, 563 U.S. 170  181-82 (2011):

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision

that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.

Thus, Petitioner is not entitled to a federal evidentiary hearing on any of his claims herein which were rejected on the merits by the state courts during Petitioner's state habeas corpus proceeding. *See Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance."), *cert. denied*, 136 S. Ct. 38 (2015).  Likewise, where a federal habeas corpus Petitioner's claims lack merit on their face, further factual development is not necessary.  *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing District Courts possess discretion regarding whether to allow factual development, especially when confronted with claims foreclosed by applicable legal authority).

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court."  *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro v. Landrigan,* 550 U.S.465, 468, 127 S. Ct. 1933, 1937, 167 L. Ed. 2d 836 (2007)).  "In determining whether to grant a hearing, under Rule 8(a) of the Habeas Court Rules 'the judge must review the answer [and] any transcripts and records of state-court proceedings... to determine whether an evidentiary hearing is warranted.' " *Richards v.* Quarterman, 566 F.3d at 562-63 (*quoting Hall v. Quarterman,* 534 F.3d 365, 368 (5th Cir. 2008) (*in turn quoting Schriro,* 550 U.S. at 473)).  In making this determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true,

would entitle the applicant to federal habeas relief." *Richards v. Quarterman*, 566 F.3d at 563 (*quoting Schriro,* 550 U.S. at 474).

Petitioner's assertions of ineffective assistance by his state trial counsel and his involuntary plea claim were both rejected on the merits during his state habeas corpus proceeding. Under *Pinhlsoter*, he is not entitled to further evidentiary or factual development of those claims. Petitioner is not entitled to an evidentiary hearing for the purpose of developing any of his claims herein. *See Segundo v. Davis.* ___ F.3d at ___, 2016 WL 4056397, at *4 ("Given the extent of the factual development during trial and during the state habeas proceedings, the district court did not abuse its discretion in determining it had sufficient evidence and declining to hold a hearing."). Petitioner fully developed all his claims during his state habeas corpus proceeding. He is not entitled to an evidentiary hearing before this Court.

## VI. Certificate of Appealability

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. §2253(c) (2). Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; 28 U.S.C. §2253(c) (3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). To make such a showing, the Petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282; *Miller-El v. Johnson*, 537 U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Johnson*, 537 U.S. at 338 (*quoting Slack v. McDaniel*, 529 U.S. at 484). In a case in which the Petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the Petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is

a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

Reasonable minds could not disagree with this Court's conclusions that (1) the state habeas court reasonably concluded all of Petitioner's complaints about the performance of his trial counsel fail to satisfy the prejudice prong of *Strickland*, (2) the state habeas court reasonably concluded all of Petitioner's claims of ineffective assistance by his state trial counsel fail to satisfy the deficient performance prong of the *Strickland* analysis, (3) the state habeas court reasonably rejected Petitioner's involuntary plea claim on the merits, and (4) Petitioner is not entitled to a federal evidentiary hearing.

Accordingly, it is hereby **ORDERED** that:

1. The referral of this cause to the Magistrate Judge is **WITHDRAWN**.

2. All relief requested in Petitioner's federal habeas corpus petition, filed April 8, 2016 (ECF no. 1), as supplemented by Petitioner's Memorandum in Support of 2254 Petition, filed May 12, 2016 (ECF no. 12), is **DENIED**.

3. Petitioner is **DENIED** a Certificate of Appealability on all claims herein.

4. Petitioner's request for a federal evidentiary hearing is **DENIED**.

5. All other pending motions are **DISMISSED AS MOOT**.

SIGNED this 11th day of October, 2016.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE